## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

STEPHEN WHITE, M.D.,

      Plaintiff Petitioner,

v.

ALEX AZAR, Secretary for the United States
Department of Health and Human Services,

      Defendant Respondent.

CIVIL ACTION NO.

U.S. Dept. of Health & Human Services
Appeals Board Decision No: 2912
App. Div. Docket No.: A-18-78

### COMPLAINT FOR JUDICIAL REVIEW

### I.    INTRODUCTION

1.    Plaintiff Stephen White, M.D., is a Washington orthopedic surgeon and prospective new enrollee in the Medicare and Medicaid Programs. This is an action seeking judicial review of the Final Decision of the Appellate Division of the Departmental Appeals Board ("DAB") of the U.S. Department of Health and Human Services ("HHS") in which the DAB, acting on behalf of the Defendant Secretary of HHS (the "Secretary") determined that Dr. White had been "convicted" of a felony offense and that this conviction was detrimental to the Medicare program and its beneficiaries.

2.    42 C.F.R. §424.530(a)(3) provides that the Centers for Medicare & Medicaid Services ("CMS") may deny enrollment in the Medicare program where the applicant was, within the preceding ten years, convicted (within the meaning of 42 C.F.R. §1001.2) of a felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries. A copy of the Final DAB Decision is attached hereto as Exhibit A.

3.    On November 2, 2010, Dr. White tendered a guilty plea in the 124th Judicial District Court in Gregg County, Texas, to the felony offense of possession of a controlled

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

substance less than one gram in violation of Texas Health and Safety Code §481.115(b). This law criminalizes possession of a controlled substance in Penalty Group 1 unless the individual obtained the substance directly or under a valid prescription from a practitioner acting in the course of professional practice. Where the amount possessed is less than one gram, the offense is a "state jail felony" punishable under Texas Penal Code §12.35 by confinement in a state jail for a term between 180 days and two years.

4.      However, pursuant to a Texas deferred adjudication procedure, Dr. White's plea was never entered into the Court's record; he was never found guilty; and he was never sentenced. Upon completion of a term of community supervision, the case was dismissed on June 27, 2012.

5.      The DAB erroneously concluded that Dr. White was "convicted" as defined in 42 C.F.R. §1001.2 and referenced in 42 C.F.R. §424.530(a)(3).

6.      The DAB also erroneously concluded that Dr. White's deferred adjudication was detrimental to the best interests of the Medicare program and its beneficiaries as referenced in 42 C.F.R. §424.530(a)(3).

7.      The DAB also erred in upholding CMS' determination that Dr. White's deferred adjudication was detrimental to the best interests of the Medicare program and its beneficiaries where CMS failed to establish a nexus to the Medicare program, relying instead on an explicit nexus to "healthcare," and where CMS' proffered detriment is nothing more than pure speculation ("may be at risk").

8.      The decision to deny Dr. White's enrollment is contrary to the applicable legal regulations of the Medicare Act; is unsupported by substantial evidence in the record; constitutes an abuse of discretion and violation of due process of law; is arbitrary and capricious; and

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

otherwise contrary to law and the purpose of the Medicare Act.

## II.    JURISDICTION AND VENUE

9.    This is a civil action arising under the Medicare Act, 42 U.S.C. §§1395 *et seq*; the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq*.; and the Constitution of the United States.

10.    This Court has jurisdiction to review a final decision of the Secretary under 42 U.S.C. §405(g) and 28 U.S.C. §1331. *See also* 42 C.F.R. §498.5; 42 C.F.R. §498.90(a)(1). A DAB decision is a final decision of the Secretary under 42 C.F.R. § 498.90. The final decision was received on December 3, 2018; this action is within the time limits as set forth in 42 C.F.R. §498.95(a).

11.    Venue is proper in the United States District Court for the Eastern District of Washington under 42 U.S.C. §405(g). *See also* 42 C.F.R. 498.90(a)(1).

## III.    PARTIES

12.    Plaintiff Stephen White, M.D., is a Washington State resident and orthopedic surgeon. Dr. White has been licensed to practice medicine in the States of Texas, Oklahoma, and Washington at times material hereto.

13.    Defendant Alex Azar is the current Secretary of the United States Department of Health and Human Services, which is statutorily responsible for the administration of the Medicare Act, 42 U.S.C. §§1395 *et seq*,; the administration of federal responsibilities under the Medicaid Act, 42 U.S.C. §§1396 *et seq*.; and derivative HHS regulations. The Secretary is sued in his official capacity.

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

## IV.    STATUTORY AND REGULATORY BACKGROUND

14.    The Medicare program is a federal health insurance program for the aged, under which qualified health care providers and suppliers are reimbursed by the federal government for the treatment and care they provide to Medicare program beneficiaries. Medicare is administered by CMS, a federal agency of HHS.

15.    In order to participate in the Medicare program, providers and suppliers must enroll in the program. Enrollment confers billing privileges – i.e. the right to claim and receive Medicare payment for health care services provided to the program beneficiaries.

16.    CMS has issued regulations that establish procedures for obtaining and maintaining Medicare enrollment privileges based on a statutory mandate to administer the Medicare program. *See* 42 C.F.R. §§424.500 *et seq.*

17.    The regulations provide that CMS may deny enrollment in the Medicare program under certain circumstances, including where:

> The provider, supplier... was, within the preceding 10 years, convicted (as that term is defined in 42 C.F.R. 1001.2) of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries. *See* 42 C.F.R. §424.530(a)(3).

## V.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    TEXAS CHARGES AND RESOLUTION:

18.    In 2007, Dr. White was charged with possession of a controlled substance in an amount less than one gram in violation of Texas Health and Safety Code §481.115(b).

19.    On November 2, 2010, Dr. White tendered a guilty plea in the 124th Judicial District Court in Gregg County, Texas (the "Texas Court") to the above charge.

20.    The Texas Court did not find Dr. White guilty of the offense. Instead, an adjudication of guilt was deferred, and Dr. White was placed on a term of community supervision.

COMPLAINT FOR JUDICIAL REVIEW – Page 4 of 12

21.    Following his successful completion of this term, the case against Dr. White was dismissed.

22.    At no point did the Texas Court enter a "judgment of conviction" against Dr. White, within the meaning of 42 C.F.R. §1001.2.

23.    At no point did the Texas Court make a "finding of guilt" against Dr. White, within the meaning of 42 C.F.R. §1001.2.

24.    At no point did the Texas Court "accept a plea of guilty" from Dr. White, within the meaning of 42 C.F.R. §1001.2. While Dr. White tendered a plea to the Texas Court, the Texas Court did not "accept" the plea within the meaning of the regulation because the plea was neither entered into the Court's record; the judge did not sign the plea form; nor was the form given any attendant formalities associated with a finding of guilt and entry of judgment.

**B.    DR. WHITE'S RECOVERY:**

25.    Dr. White first voluntarily self-reported the use of a controlled substance to the Texas Board of Medicine in 2005 and ceased practicing medicine in February 2006.

26.    Dr. White has maintained his sobriety since February 27, 2007.

27.    In 2008, Dr. White and the Texas Board of Medicine entered an Agreed Order (the "2008 Order") whereby suspension of his license to practice medicine was stayed for fifteen years under certain terms and conditions. One of the findings in this Order was:

> The Board determined, based on the evidence presented at the [Informal Settlement Conference], that [Dr. White] has demonstrated by clear and convincing evidence and information that he is physically, mentally, and otherwise competent to safely practice medicine under the terms and conditions of this Order.

28.    Among other terms and conditions in the 2008 Order, the Texas Board of Medicine

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

required that Dr. White attend narcotics and alcoholics anonymous meetings (NA and AA respectively); be monitored by a psychiatrist; and be prohibited from supervising or delegating prescriptive authority.

29.    On February 10, 2012, the Texas Board of Medicine modified the 2008 Order, eliminating the requirement to participate in NA; reducing the participation requirement in AA; eliminating the requirement of a monitoring psychiatrist; and permitting supervision of and delegation to mid-level practitioners.

30.    On December 6, 2013, the Texas Board of Medicine shortened the fifteen year monitoring period to seven years, due to Dr. White's demonstration of continued sobriety and his compliance with the terms of the 2008 Order.

31.    While the 2008 Order was in effect, Dr. White applied for and received a license to practice medicine in Oklahoma, pursuant to the same restrictions in the 2008 Order.

32.    Dr. White was recertified by the American Board of Orthopedic Surgery on January 1, 2015.

33.    On December 12, 2015, the 2008 Order and the terms and conditions therein was terminated, permitting Dr. White to practice medicine unrestricted in Texas.

34.    On January 14, 2016, the Oklahoma Board of Medical Licensure & Supervision followed suit and terminated his agreement with Oklahoma, permitting Dr. White to practice medicine unrestricted in Oklahoma.

35.    Upon moving to the State of Washington, Dr. White voluntarily enrolled in the Washington Physicians Health Program (WPHP) to further his commitment to practice medicine in an ethical and competent manner.

36.    On February 7, 2017, Washington State issued Dr. White an unrestricted license to

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

practice medicine.

37.     Dr. White currently practices in Okanogan County, Washington, a rural and poverty-stricken area. The United States Census Bureau estimates that 21.8% of all persons and 9.9% of persons 65 and older live below the poverty line in Okanogan County. HHS data indicates that there are 9,516 Medicare beneficiaries with Part A and Part B coverage in this County, with an average age of 71.

38.     Medicare beneficiaries in Okanogan County in need of orthopedic surgeon services are not able to receive these services on a timely basis or without considerable hardship due to financial and travel constraints, as well as a shortage of services in this area.

39.     Dr. White's conduct is not detrimental to Medicare beneficiaries – to the contrary, it is the CMS denial of his enrollment that is detrimental to the Medicare beneficiaries that Dr. White could and should be treating.

## C.     MEDICARE ENROLLMENT APPLICATION

40.     On February 9, 2017, Dr. White signed and submitted a Medicare enrollment application form CMS-855I. He disclosed two prior misdemeanor convictions for DUI and unlawful possession of a prescription medication, but did not disclose that he had tendered a guilty plea to felony possession of a controlled substance. However, a print-out of his Texas Criminal History report was submitted with his application, showing the guilty plea.

41.     On June 8, 2017, Noridian Healthcare Solutions, LLC ("Noridian"), a CMS contractor, notified Dr. White that CMS had determined to deny his enrollment application pursuant to 42 C.F.R. §424.530(a)(3) due to his guilty plea to felony possession of a controlled substance.

42.     Dr. White sought reconsideration, enclosing a Corrective Action Plan ("CAP"); arguing

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

that his conduct was not detrimental to Medicare program or beneficiaries and did not place them at risk; stating that he was not practicing medicine at the time of the plea; and stating that he had successfully sought treatment for addiction.

43.    CMS issued a reconsidered determination upholding the initial determination on the same grounds, reasoning that Dr. White's conduct was sufficiently similar to the crimes enumerated under §1128(a)(4) of the Act, which mandate exclusion of individuals convicted of a felony offense related to "the unlawful manufacture, distribution, prescription or dispensing of a controlled substance." CMS further concluded that the conduct was detrimental "because of its nexus to healthcare," reasoning that since the Texas and Oklahoma medical boards required that Dr. White's practice of medicine be supervised, Medicare beneficiaries and Medicare Trust funds "may be at risk" were he approved to participate in Medicare.

44.    Dr. White sought review of the CMS determination from an Administrative Law Judge ("ALJ"). The ALJ determined that Dr. White had been "convicted" within the meaning of 42 C.F.R. §1001.2. While the ALJ determined that possession of a controlled substance was not among the *per se* detrimental felonies, the ALJ still concluded that CMS lawfully determined that Dr. White's conduct was detrimental to the interests of the Medicare program and its beneficiaries.

45.    The ALJ also remarked:

> I cannot say CMS has exercised its discretion regarding Petitioner's enrollment in a way that actually makes the Medicare program or its beneficiaries any safer. But for the reasons outlined above, I must conclude that CMS had a legitimate basis to deny Petitioner's enrollment application based on his felony conviction and the risk of harm it posed to the Medicare program and its beneficiaries. However, given that more than ten years since Petitioner's felony conviction have now passed, and that no less than three state medical boards have deemed him capable of practicing medicine

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

without need for monitoring or supervision, it is my expectation that CMS will better exercise its discretion concerning Petitioner's next enrollment application.

46. In the ALJ proceeding, CMS provided a copy of Dr. White's criminal history as retrieved by Noridian on 11/30/2016 (CMS Ex. 3, pg. 11). In response, the offices of Miller & Chase, PLLC, provided to Noridian and CMS a letter detailing an error in the Texas Court's records; providing an updated, corrected copy of his criminal history retrieved on 9/19/2017; and requesting that Noridian re-run the criminal history search (Plaintiff Ex. 1 at 61-62). The results of this search were inadvertently omitted from the record before the ALJ, but CMS and Noridian proceeded to present their case knowing their exhibit was incorrect.

47. Dr. White then appealed to the DAB, which upheld the ALJ's determination. The DAB reasoned that a Texas deferred adjudication is a "conviction," relying on the *Kimberly Shipper* case and sources cited therein. The DAB also concluded that CMS had a legal basis to determine that Dr. White's conduct was detrimental to the Medicare program and its beneficiaries.

48. On December 3, 2018, the DAB issued Decision No. 2912, upholding the ALJ determination (Exhibit A).

## VI.    LEGAL CLAIMS:

### COUNT I – VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT:

49. Plaintiff re-alleges paragraphs 1 through 48 as if fully set forth herein.

50. The Secretary's conclusion that Plaintiff's Texas Deferred Adjudication was a "conviction" as defined under 42 C.F.R. §1001.2 was arbitrary and capricious; erroneous; unsupported by substantial evidence; and constituted an abuse of discretion in violation

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

of the APA.

51.    The Secretary's conclusion that Plaintiff's conduct was detrimental to the best interests of the Medicare program and its beneficiaries was arbitrary and capricious; erroneous; unsupported by substantial evidence; and constituted an abuse of discretion in violation of the APA.

52.    The Secretary's conclusion that Plaintiff's conduct was detrimental to the best interests of the Medicare program and its beneficiaries is the result of an erroneous application of the language of 42 C.F.R. §424.530(a)(3) to the extent the Secretary determined that beneficiaries and trust funds "may be" at risk, rather than conducting a present determination of whether the conduct "is detrimental" to the program. This was legal error, arbitrary and capricious action, and constitutes an abuse of discretion in violation of the APA.

53.    Based on the foregoing, Plaintiff is entitled to Judicial Review and the prayed-for declaratory relief herein.

### COUNT II – VIOLATION OF THE MEDICARE ACT:

54.    Plaintiff re-alleges paragraphs 1 through 53 as if fully set forth herein.

55.    The Secretary has acted beyond his authority under the Medicare Act, 42 U.S.C., §1395 *et seq.* by denying Plaintiff's enrollment on insufficient grounds as Plaintiff's Texas deferred adjudication does not constitute a conviction within the meaning of 42 C.F.R. §424.530(a)(3) and 42 C.F.R. §1001.2.

56.    The Secretary also acted beyond his authority by determining that Plaintiff's conduct is detrimental to the best interests of the Medicare program and its beneficiaries.

57.    The Secretary also acted beyond his authority by determining that Plaintiff's conduct is

COMPLAINT FOR JUDICIAL REVIEW – Page 10 of 12

detrimental to the best interests of the Medicare program and its beneficiaries by concluding that supervision which was terminated in 2015 (TX) and 2016 (OK) evidenced that Medicare beneficiaries and Trust Funds "may be" at risk. The regulations in 42 C.F.R. §424.530(a)(3) do not permit CMS to speculate or peer into the past, but rather to make a present determination that the conduct **"is detrimental"** rather than "was detrimental" or "may be or may have been detrimental."

58.     Based on the foregoing, Plaintiff is entitled to Judicial Review and the prayed-for declaratory relief herein.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.     Set aside the DAB decision;

B.     Declare that the Secretary abused his discretion and acted in an arbitrary and capricious manner by denying Plaintiff's enrollment application;

C.     Declare that the Secretary's findings are unsupported by substantial evidence as required by the APA;

D.     Declare that the Secretary's decision to deny Plaintiff's enrollment application violated the Medicare Act;

E.     Order that the Secretary and CMS shall reconsider Plaintiff's enrollment application in light of the above declaratory judgments;

F.     Award Plaintiff his reasonable attorney's fees for this action; and

G.     Grant such further relief as the Court may deem reasonable and just.

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

Respectfully Submitted this 15th of January, 2019,

**Dr. Stephen White, M.D.**; *by and through his attorneys,*

Kenneth J. Miller, WSBA #46666

Andrew J. Chase, WSBA #47529

Miller & Chase, PLLC
PO Box 978
Okanogan, WA 98840
509-861-0815 (P)
509-557-6280 (F)

MILLER & CHASE, PLLC
PO BOX 978
OKANOGAN, WA 98840
509-861-0815 (P)
509-557-6280 (F)

# Exhibit A

**Department of Health and Human Services**
**DEPARTMENTAL APPEALS BOARD**
**Appellate Division**

Stephen White, M.D.
Docket No. A-18-78
Decision No. 2912
December 3, 2018

## FINAL DECISION ON REVIEW OF
## ADMINISTRATIVE LAW JUDGE DECISION

Stephen White, M.D., (Petitioner) appeals the April 10, 2018 decision of the
Administrative Law Judge (ALJ). *Stephen White, M.D.*, DAB CR5069 (2018) (ALJ
Decision). In that decision, the ALJ affirmed a determination by the Centers for
Medicare & Medicaid Services (CMS) to deny Petitioner's Medicare enrollment
application due to his guilty plea in Texas to felony possession of a controlled substance,
and for submitting false or misleading information on his Medicare enrollment
application. For the reasons discussed below, we affirm the ALJ's decision.

### Legal Background

The Medicare program provides health insurance benefits to persons 65 years and older
and to certain disabled persons. Social Security Act (Act) §§ 1811, 1831, 1833.[1]
Medicare is administered by CMS, which delegates certain program functions to private
contractors that function as CMS's agents in administering the program – in this case,
Noridian Healthcare Solutions (Noridian). *See* Act §§ 1816, 1842, 1866, 1874A; 42
C.F.R. § 421.5(b). The relevant regulations governing Medicare enrollment are found in
42 C.F.R. Part 424, subpart P (§§ 424.500 through 424.570).

In order to receive payment for services furnished to Medicare beneficiaries, a medical
provider or supplier – the term "supplier" encompasses a physician – must be "enrolled"
in Medicare.[2] 42 C.F.R. §§ 424.500, 424.505. Regulations at 42 C.F.R. § 424.530
authorize CMS to deny a provider's or supplier's application to enroll in the Medicare

---

[1] The current version of the Social Security Act can be found at
https://www.ssa.gov/OP_Home/ssact/ssact-toc.html. Each section of the Act on that website contains a reference to
the corresponding United States Code chapter and section. Also, a cross-reference table for the Act and the United
States Code can be found at https://www.ssa.gov/OP_Home/comp2/G-APP-H.html.

[2] The regulations at 42 C.F.R. § 400.202 define a "supplier" as "a physician or other practitioner, or an
entity other than a provider, that furnishes health care services under Medicare."

program for several reasons. "Deny/Denial" means "the enrolling provider or supplier has been determined to be ineligible to receive Medicare billing privileges for Medicare covered items or services provided to Medicare beneficiaries." *Id.* § 424.502.

Section 1842(h)(8) of the Act gives the Secretary of Health and Human Services discretion to refuse to enter into an agreement or to terminate or refuse to renew an agreement with a physician or supplier who "has been convicted of a felony under Federal or State law for an offense which the Secretary determines is detrimental to the best interests of the program or program beneficiaries." *See also* 42 C.F.R. § 424.530(a). Section 424.530(a) provides that "CMS may deny a provider's or supplier's enrollment in the Medicare program" for any of the reasons that follow, including:

> (3) *Felonies.* The provider, supplier, or any owner or managing employee of the provider or supplier was, within the preceding 10 years, convicted (as that term is defined in 42 CFR 1001.2) of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries.

> (i) Offenses include, but are not limited in scope or severity to—
> * * * *
>> (C) Any felony that placed the Medicare program or its beneficiaries at immediate risk, such as a malpractice suit that results in a conviction of criminal neglect or misconduct.
>>
>> (D) Any felonies that would result in mandatory exclusion under section 1128(a) of the Act.

Section 1128(a)(4) (42 U.S.C. § 1320a-7(a)(4)) of the Act provides that the Secretary "shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1128B(f)):

> Any individual or entity that has been convicted for an offense which occurred after [August 21, 1996,] under Federal or State law, of a criminal offense consisting of a felony relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

The regulation at 42 C.F.R. § 424.530(a)(3) states that—

> (ii) Denials based on felony convictions are for a period to be determined by the Secretary, but not less than 10 years from the date of conviction if the individual has been convicted on one previous occasion for one or more offenses.

3

The regulation at 42 C.F.R. 1001.2 thusly defines the following terms:

> §1001.2 Definitions.  For purposes of this part:
> * * * *
> *Controlled substance* means a drug or other substance, or immediate precursor:
> * * * *
>  (b) That is deemed a controlled substance by the law of any State.[3]
>
> *Convicted* means that—
>
>  (a) A judgment of conviction has been entered against an individual or entity by a Federal, State or local court, regardless of whether:
>
>  (1) There is a post-trial motion or an appeal pending, or
>
>  (2) The judgment of conviction or other record relating to the criminal conduct has been expunged or otherwise removed;
>
>  (b) A Federal, State or local court has made a finding of guilt against an individual or entity;
>
>  (c) A Federal, State or local court has accepted a plea of guilty or nolo contendere by an individual or entity; or
>
>  (d) An individual or entity has entered into participation in a first offender, deferred adjudication or other program or arrangement where judgment of conviction has been withheld.

A felony conviction is a final adverse legal action.  42 C.F.R. § 424.502.

CMS has explained that, in applying this provision to determine whether to deny enrollment, it will consider "the seriousness of the offense in determining whether a denial . . . is warranted under [§] 424.530(a)(3)[.]"  79 Fed. Reg. 72,500, 72,510 (Dec. 5, 2014).  Further, CMS explained that not every felony conviction will automatically result in denial and that "[e]ach case will be carefully reviewed on its own merits and . . . [CMS would] act judiciously and with reasonableness in [its] determinations.  *Id.*

---

[3] CMS contends that the substance Petitioner was charged with possessing, identified as a "Penalty Group 1" substance as defined in the Texas Health and Safety Code, includes drugs such as opium derivatives, opiates, Oxycodone, cocaine and Methadone.  ALJ Decision at 8.  Petitioner states that in 2008 he reported using cocaine to the Texas Medical Board.  P. Ex. 10, at 2, ¶ 11.

4

Section 1866(j)(8) of the Act provides a right to an ALJ hearing for any supplier whose application for enrollment is denied. *See also* 42 C.F.R. § 498.3(b)(17). CMS implemented § 1866(j)(8) by providing administrative hearing rights for suppliers denied enrollment in 42 C.F.R. §§ 424.545 and 405.803, and Part 498.

**Case Background[4]**

Petitioner is a physician who entered a guilty plea in Texas state court in 2010 to one felony count of possession of a controlled substance, stemming from a February 2007 arrest.[5] ALJ Decision at 6; CMS Ex. 1. The Texas court received his guilty plea and found that the plea was supported by the evidence. ALJ Decision at 7. However, the Texas court afforded Petitioner the opportunity to participate in a deferred adjudication program. CMS Ex. 1, at 25-26. On February 9, 2017 (within 10 years of Petitioner's guilty plea and deferred adjudication of the felony), Petitioner signed and submitted a Medicare enrollment application form CMS-855I. ALJ Decision at 1.

In the letter attached to his Medicare enrollment application, Petitioner disclosed two prior misdemeanor convictions for Driving Under the Influence (DUI) (for which he also had received deferred adjudication), and for unlawful possession of prescription medication, but failed to disclose his guilty plea to felony controlled substance possession, all of which was set forth in a print-out of his Texas criminal history search results, which he submitted along with his Medicare enrollment application. *See id.* at 22-26.

On June 8, 2017, Noridian notified Petitioner that CMS had determined to deny his Medicare enrollment application pursuant to 42 C.F.R. § 424.530(a)(3), due to his 2010 guilty plea to felony possession of a controlled substance; and for other reasons not relevant to this decision.[6] CMS Ex. 2. Petitioner requested reconsideration, enclosing with his request a proposed corrective action plan (CAP), arguing that his felony conduct did not place the Medicare program or its beneficiaries at immediate risk, and stating that he was not practicing medicine at that time and that he had sought treatment for

---

[4] The background information is drawn from the ALJ Decision and the record before the ALJ and is not intended to substitute for his findings.

[5] It is not clear in the record exactly what substance Petitioner was arrested for having in his possession on February 23, 2007, however, Petitioner admits to past substance abuse and having been arrested for possession of anti-depressant medication without a prescription. *See* CMS Ex. 1, at 22, 26.

[6] Like the ALJ, we do not consider the denial of Petitioner's enrollment application under section 424.530(a)(4) because we affirm the ALJ Decision that CMS had a basis for the denial under section 424.530(a)(3), and that is all that is necessary to uphold the denial. Since we do not need to reach the section 424.530(a)(4) issue, we have not included facts involving that issue in the Background.

addiction. CMS Ex. 3, at 3. In addition, Petitioner argued that he had not provided false or misleading information on his enrollment application because he had responded "yes" that he had been subject to final adverse legal actions and had disclosed his criminal history, which included the disposition of his 2010 felony charge and guilty plea. *Id.* Here, Petitioner specifically cited to his enrollment application and the attached Texas criminal history record (CMS Ex. 1), and again included the criminal history record reflecting the 2010 felony charge and guilty plea with his CAP. CMS Ex. 3 at 3, 11-15.

Through its Provider Enrollment & Oversight Group, CMS issued a reconsidered determination upholding the initial determination on the same grounds. CMS Ex. 4. CMS concluded that it had a legal basis under §§ 424.530(a)(3) to deny Petitioner's Medicare enrollment application. *Id.* CMS reasoned that it had a legal basis to deny Petitioner's Medicare enrollment application pursuant to § 424.530(a)(3) because Petitioner's felony conviction was for a crime sufficiently similar to the crimes enumerated in section 1128(a)(4) of the Act, which "mandate[s] the exclusion of individuals convicted of a felony offense relating to the unlawful manufacture, distribution, prescription or dispensing of a controlled substance from participation in Federal healthcare programs." *Id.* at 4. Further, CMS concluded that, in this case, Petitioner's felony conviction was detrimental to Medicare "because of its nexus to healthcare." *Id.* CMS reasoned that because (by his own admission) the Texas and Oklahoma medical boards required Petitioner's practice be monitored, that Medicare beneficiaries and Medicare Trust funds "may be at risk" if Petitioner were approved to participate in Medicare. *Id.*

In his Request for Hearing (RFH), Petitioner argued that CMS erred in concluding that Petitioner's guilty plea to what is essentially felony drug possession is per se detrimental to the Medicare program and its beneficiaries. RFH at 2. Petitioner reasoned that he was not charged with unlawful manufacturing, distribution, prescription or dispensing of a controlled substance, and therefore, the evidence in this case does not establish a criterion for mandatory exclusion under the Act. *See id.* Next, Petitioner argued that his illicit conduct and resulting guilty plea lacked sufficient nexus to healthcare to provide a legal basis for denial of his Medicare enrollment application. *Id.* Petitioner reasoned, in sum, that CMS was essentially unfairly punishing him for self-reporting his legal and substance abuse problems to the Texas and Oklahoma state medical boards, and the fact that he self-reported to the state medical boards while he was not a practicing physician indicated that his enrollment as a Medicare supplier would not be detrimental to the Medicare program or its beneficiaries. *Id.* Petitioner submitted ten exhibits along with his Request for Hearing.

6

In its Pre-Hearing Brief and Motion for Summary Judgment (Pr. Hrg. Brf.), CMS argued, in pertinent part, that denial of Petitioner's enrollment application was lawful based on undisputed facts involving Petitioner's conviction of a felony "within the preceding ten years." CMS Pr. Hrg. Brf. at 1, 9 (citing 42 C.F.R. § 424.530(a)(3)). CMS noted that Petitioner did not dispute that he entered a guilty plea in 2010 to a felony drug offense and argued that it is immaterial that the adjudication of guilt was deferred and later dismissed. *Id*. at 8. CMS focused on the provisions of the regulation which specify that "convicted" means that a judgment of conviction has been entered, notwithstanding a post-trial motion, pending appeal, or subsequent expungement; or that the individual has been afforded the benefit of first offender, deferred adjudication, or other program or arrangement where judgment of conviction has been withheld. *Id*. (citing 42 C.F.R. § 1001.2). A person is convicted, CMS argued, when that individual enters a "guilty plea" which is accepted by a federal, state, or local court. *Id*. (citing *Dinesh Patel, M.D.*, DAB No. 2551, at 3 (2013)). Therefore, CMS contended, "Petitioner has a felony conviction." *Id*.

CMS also argued that it was reasonable for CMS to find Petitioner's felony offense per se detrimental to the Medicare program based on the similarities between Petitioner's offense and the enumerated offenses under the mandatory exclusion provision of the Act. *Id*. at 10. While CMS recognized that Petitioner's felony was for drug possession and not drug trafficking, CMS nonetheless argued that the severity and potency of the substance involved in Petitioner's offense made it reasonable for a fact-finder to infer, as CMS had when reconsidering the initial denial, that–

> Petitioner's felony conviction appropriately fell within 'CMS's authority' to deny Medicare enrollment 'as it is akin to a felony drug related offense that is deemed *per se* detrimental to the best interests of the Medicare program and its beneficiaries.'

*Id*. at 10 (citing CMS Ex. 4, at 4). Further, CMS argued that it was within CMS's discretionary authority to decide what is detrimental to the Medicare program and that an ALJ may only "decide whether the regulatory criteria for denial are met," and that the reasonableness of CMS's exercise of discretion is not subject to review. *Id*. at 10-11 (citing the ALJ decision in *Ronald Paul Belin, DPM*, DAB CR3796, at 3 (2015); *Douglas Bradley, M.D.*, DAB No. 2663, at 13 n.13 (2015)).

CMS also argued that even if Petitioner's offense was not per se detrimental to the Medicare program and its beneficiaries, CMS could find a nexus between the offense and the Medicare program because its beneficiaries "warranted protection by not putting them at risk with a practitioner having a felony drug conviction less than 10 years old, if the supplier 'is approved to participate in the Medicare program.'" *Id*. at 11-12 (quoting CMS Ex. 4, at 4).

7

In a separate submission, CMS also objected to portions of Petitioner's Ex. 1, as well as all of Petitioner's Exs. 2-9, as impermissible new evidence not submitted at the reconsideration level, as duplicative of other evidence in the record, or as constituting legal argument by Petitioner's legal counsel.  CMS Objections to Exhibits, at 1-2.  In addition, CMS reserved the right to cross examine Petitioner based on his written direct testimony (i.e., P. Ex. 10) but did not request a hearing.  *Id*. at 2-3.  The ALJ found good cause to admit Petitioner's exhibits over CMS's objections.[7]  ALJ Decision at 4.

Petitioner opposed CMS's summary judgment motion, contending that Petitioner had not been convicted under Texas or federal law and that Petitioner's conduct was not per se detrimental to the Medicare program or its beneficiaries.  Petitioner's Pre-Hearing Brief and Opposition to CMS's Motion for Summary Judgment.  Petitioner argued that although the court received his guilty plea, it made no finding of guilt pursuant to its deferred adjudication procedures under Texas law.  *Id*. at 4.  Next, Petitioner argued that CMS erred when it determined that his drug possession of "a small personal use amount" was akin to any of the enumerated mandatory exclusion crimes under section 1128(a)(4) of the Act, and that the severity and potency of the drug did not, in and of itself, elevate it to the same level of detriment as the enumerated felonies under the mandatory exclusion statute.  *See id.*, at 8-9.  Moreover, Petitioner asserted, his felony offense was not actually detrimental to Medicare or its beneficiaries because Petitioner had been subject to practice monitoring in Texas and Oklahoma, had admitted and addressed his substance abuse problem, and had maintained sobriety for over nine years (as of the time he submitted his Pre-Hearing Brief).  *Id*. at 10.  CMS's conclusion was unreasonable and unfair, Petitioner argued, as well as inconsistent with CMS policy statements that it would act "judiciously and with reasonableness" and that "each case would be carefully reviewed on its own merits."  *Id*. at 10-11 (citing 79 Fed. Reg. at 72,510).

**The ALJ Decision**

The ALJ sustained CMS's denial determination in his decision on the written record, having received CMS's four exhibits and Petitioner's ten exhibits into the administrative record.  ALJ Decision at 3-4.  First the ALJ rejected Petitioner's argument that he was never convicted of a felony because the sentencing court never accepted his guilty plea or entered a judgment of guilty against him.  *Id*. at 6-7.  The ALJ relied on Petitioner's undisputed guilty plea and on 42 C.F.R. § 1001.2 (d), which includes deferred adjudications in the definition of "conviction."  *Id*.  The ALJ concluded that Petitioner

---

[7] The ALJ admitted P. Exs. 2-9 over CMS's objection; however, the ALJ neglected to state whether he also admitted P. Ex. 10 (Petitioner's written direct testimony) into the administrative record.  Because CMS did not object to it and the ALJ did not exclude P. Ex. 10 from the record, we conclude that this was an oversight by the ALJ and P. Ex. 10 is part of the administrative record in this appeal.

was convicted of a felony within the ten years preceding enrollment for purposes of denial under section 424.530(a)(3). *Id.* at 6. The ALJ concluded that Petitioner's drug possession felony conviction was not among the felonies that CMS had determined to be *per se* detrimental to the Medicare program. *Id.* at 8-9. Nonetheless, the ALJ concluded that CMS's determination that Petitioner's felony was detrimental to the interests of the Medicare program and its beneficiaries was lawful because the regulatory language allowed CMS to make that determination on a case-by-case basis. *Id.* at 9-11.

Having found a basis for denial of enrollment under section 424.530(a)(3), the ALJ did not reach the question whether a basis existed under section 424.530(a)(4) for making a false or misleading statement in an enrollment application. *Id.* As to Petitioner's charge that CMS's determination was unfair, the ALJ explained that he could not, on equitable grounds, grant Petitioner's requested relief. *Id.* at 11. This appeal followed.

### Standard of Review

The Board's standard of review on a disputed factual issue is whether the ALJ decision or ruling is supported by substantial evidence in the record. *Guidelines — Appellate Review of Decisions of Administrative Law Judges Affecting a Provider's or Supplier's Enrollment in the Medicare* (at https://www.hhs.gov/about/agencies/dab/different-appeals-at-dab/appeals-to-board/guidelines/enrollment/index.html). The standard of review on a disputed issue of law is whether the ALJ decision or ruling is erroneous. *Id.*

### Petitioner's Request for Review

On appeal, Petitioner argues that the ALJ erred by concluding that he had been convicted pursuant to his guilty plea because the Texas court did not accept his guilty plea. Petitioner further argued that the ALJ erred in finding that CMS reasonably determined that Petitioner's offense was detrimental to the Medicare program. Request for Review (RR) at 1. Petitioner argues that the cases CMS and the ALJ relied upon are distinguishable from his. CMS's reliance on the Board's decision in *Dinesh Patel, M.D.,* DAB No. 2551 (2013), is misplaced, he argues, because in *Patel*, the sentencing court accepted the Dr. Patel's guilty plea and sentenced him to prison and supervised release. RR at 2. Further, Petitioner argues, Dr. Patel's plea agreement included "acknowledgment of substantive facts establishing harm to the Medicare program." *Id.* (citing *Patel* at 3). In contrast, Petitioner argues the sentencing court in his case never accepted his guilty plea, never entered a finding of guilt, did not sentence him, and dismissed the charge with prejudice. *Id.* at 2-3. Petitioner contends the ALJ's reliance on *Henry L. Gupton,* DAB No. 2058 (2007), *aff'd, Gupton v. Leavitt*, 575 F. Supp. 2d 874

(E.D. Ill 2008), also is misplaced. What distinguishes *Gupton*, Petitioner argues, is that although Dr. Gupton received deferred adjudication, the sentencing court accepted Dr. Gupton's plea of "no contest"; thereafter, Dr. Gupton was able to purge his guilt after completing certain court-ordered conditions. *Id.* at 3. Here, Petitioner argues, there is no conviction to expunge. *Id.*

Petitioner also contends that the ALJ's determination that his offense placed Medicare beneficiaries at risk is unfounded. *Id.* at 4. He notes the ALJ's reliance on the regulatory language "any felony that placed the Medicare program or its beneficiaries at immediate risk" but disputes that the "monitoring and close supervision" to which the Texas medical board subjected Petitioner, which was intended to protect patients, "somehow places those patients at immediate risk." *Id.* Petitioner claims this conclusion was counterintuitive in view of the fact that he was not practicing medicine (at the time he pleaded guilty to a felony in 2010) and since he subsequently has been licensed to practice medicine in the states of Texas, Oklahoma and Washington. *Id.*

In addition to his Request for Review, Petitioner also submitted a Motion to Correct Record (Motion). In his Motion, Petitioner contends that P. Ex. 1, at 61-62 (letter from Petitioner's legal counsel) explains that information reflecting a felony drug possession conviction in the Texas criminal history record is incorrect and that he should be permitted to substitute a more recent version of the Texas criminal history record from September 2017. Motion at 1-2. Petitioner argues that CMS knew that CMS Ex. 3 contained "incorrect" information in November 2017 when CMS filed its exhibits with the ALJ. *Id.* The information in Petitioner's Texas criminal record has since been "corrected," Petitioner claims, and Petitioner wishes to substitute the "corrected" record for the Texas criminal history record that appears in exhibits made part of the administrative record before the ALJ.

**CMS's Response to Petitioner's Request for Review**

CMS filed a brief in response, arguing that a court's mere receipt and entry of a plea of guilty into the record constituted a "conviction" under the regulations, and that the Board made no distinction between "accept" and "receive" in this context because the words are commonly understood to mean the same thing. CMS Response to Petitioner's Request for Review at 5-6 (citing *Kimberly Shipper, PA,* DAB No. 2804, at 5 (2017)). Further, CMS contends that it reasonably determined that Petitioner's conviction was detrimental to the best interests of the Medicare program and its beneficiaries based on its finding of a nexus between healthcare and Petitioner's felony drug possession conviction because two state medical boards imposed a practice monitor on Petitioner. CMS Response at 6. This exercise of discretion by CMS, it argues, is not subject to review. *Id.* at 7 (citing *Douglas Bradley, M.D.* at 13 n.13). CMS argued that the regulation requires only that a

10

Medicare enrollment applicant's felony conviction have "placed" the Medicare program at immediate risk when the felonious conduct occurred; that the conduct is not currently evident does not mean that CMS could not reasonably conclude that, as in this case, drug abuse and felony convictions currently pose such a risk. *See id.* at 7. The fact that state medical boards imposed monitoring and close supervision requirements on Petitioner, CMS argues, implied that "potential patients were considered to be in immediate risk." *Id.*

CMS also opposed Petitioner's "Motion to Correct Record," arguing that the regulation at 42. C.F.R. § 498.86(a) prohibits introduction of new evidence at the Board level and that Petitioner had the opportunity to submit its substitute exhibit to the ALJ. *Id.* at 8. CMS argues that Petitioner's contention–that the exhibit was submitted containing incorrect information–is not true and that CMS and Petitioner submitted copies of Petitioner's Texas criminal history record containing the same correct information.

**Analysis**

The Board has reviewed the administrative record below and considered the parties' arguments, and we affirm the ALJ decision upholding denial of Petitioner's Medicare supplier enrollment application. Below we explain that substantial evidence in the administrative record supports the ALJ's conclusion that Petitioner was, in fact, convicted of a felony within ten years of CMS's decision to deny his application, and the ALJ did not err when he held that CMS had lawfully determined that Petitioner's felony drug possession conviction was detrimental to the Medicare program and its beneficiaries. First, however, we deny Petitioner's Motion to Correct Record and explain why.

   *A. We deny Petitioner's Motion to Correct Record because Petitioner has presented no factual or legal basis for it.*

In provider or supplier enrollment appeals, the Board may not admit evidence into the record in addition to the evidence introduced at the ALJ hearing (or the documents considered by the ALJ if the hearing was waived). 42 C.F.R. § 498.86(a). In his Motion, Petitioner concedes that new evidence is not admissible in this appeal at the Board level; however, he argues that his substitute evidence is not new but rather a corrected version of an exhibit admitted into the record by the ALJ that he claims contains incorrect information. The regulation, Petitioner argues, does not prohibit substitution of exhibits to "correct" the record. Motion at 2.

11

We are not presented with a situation where an exhibit containing incorrect information was made part of the administrative record and, therefore, we need not address whether CMS intended to prohibit substitution of exhibits to correct the record when it issued a regulation that prohibited introduction of new evidence before the Board. We are presented with new evidence – evidence which conflicts with other evidence Petitioner has submitted and with the positions he has taken at the reconsideration and ALJ levels – and, therefore, we deny the Motion.

The new evidence Petitioner presents as exhibit A to his Motion is a copy of his Texas criminal history record that, unlike the Texas criminal history record admitted by the ALJ does not reflect his 2010 guilty plea to felony drug possession. *See* CMS Ex. 3, at 11-14; CMS Ex. 1, at 23-26. Despite having the opportunity to do so, Petitioner did not submit Motion Exhibit A to the ALJ for consideration. Petitioner's final submission to the ALJ was "Petitioner's Response to CMS's Objections to Exhibits" on January 19, 2018. *See* DAB E-File Civil Remedies Division Docket No. C-18-55, Document No. 9. Yet Motion Exhibit A bears the date "2017-09-19," a date well before Petitioner's final submission and the ALJ Decision. As of April 10, 2018, when the ALJ issued his decision, the administrative record was closed. The Motion to Correct Record was submitted to the Board on June 14, 2018. *See* DAB E-File Appellate Division Docket No. A-18-78, Document No. 3. This, in and of itself, makes Motion Exhibit A new evidence, and therefore inadmissible, without some heretofore unidentified exception to the regulatory prohibition against admission of new evidence at the Board level.

Even if Petitioner had shown that CMS, despite any language to that effect, intended an exception for corrective exhibits, the administrative record now before us requires no correction. The record already contains the "correct" Texas criminal history record, the one that existed at the time Petitioner applied for and was denied enrollment in the Medicare program. *See* CMS Ex. 3, at 11-14; CMS Ex. 1, at 23-26. As CMS's exhibits show, Petitioner himself submitted that record to the contractor as part of his application and also as part of his corrective action plan, the latter in an attempt to show that he had not provided false and misleading information about adverse actions in his application. *See* CMS Ex. 1, at 10, 21-26; CMS Ex. 3, at 3, 11-14. Petitioner also cited the criminal history record contained in CMS's exhibits in his prehearing brief before the ALJ, in an attempt to rebut CMS's argument that he had not disclosed the felony conviction on his Medicare enrollment application. *See* P. Pre-Hearing Brief and Opposition to Motion for Summary Judgment at 2 ("Petitioner supplemented written answers with his application, in a one-page attachment titled 'Summary for yes answers.' In addition to licensing paperwork, he also attached a four-page document titled 'Texas Department of Public Safety Criminal History Search.'" (Citation omitted.)).

12

Petitioner cannot have it both ways. Either he entered a guilty plea and availed himself of deferred adjudication prior to June 26, 2012, and was placed on probation, and disclosed this fact when he applied for Medicare enrollment, as evidenced by the Texas criminal history record included in CMS Exs. 1 and 3, or he never entered, and the court never received, his guilty plea to felony drug possession and therefore was never placed on probation. If he was never placed on probation, there would have been no need for the court to issue an order *discharging* him from the court's supervision (*see* counsel letter and attachment in P. Ex. 1 at 61-63), for he would not have been subject to the court's supervision in the first place. Moreover, there would have been no need for the court to defer his adjudication and place him on probation if the court had not accepted his guilty plea as Petitioner claims. *See* P. Ex. 10, at 2, ¶ 9. It follows that Petitioner pleaded guilty in order to gain the benefit of the bargain – deferred adjudication – and deferred adjudication required him to perform certain probationary terms and conditions, after which the court discharged him and dismissed the case against him. Petitioner cannot now argue that he never pleaded guilty and did not receive deferred adjudication and prove the point with an Order Altering Terms of Community Supervision that explains that Petitioner successfully completed the probation he denies having performed. The two positions are mutually exclusive.

For the reasons stated, we deny Petitioner's Motion to Correct Record.

    B. *The ALJ Decision upholding denial of enrollment based upon section*
       *424.530(a)(3) is supported by substantial evidence in the record and is free from*
       *legal error.*

       1. The ALJ correctly decided that the record established a qualifying felony
          conviction for purposes of denying enrollment under 42 C.F.R.
          § 424.530(a)(3).

Substantial evidence in the record supports the ALJ's conclusion that Petitioner was convicted of a qualifying felony under the regulations. The ALJ received all four of CMS's exhibits and all 10 of Petitioner's exhibits into the administrative record. As discussed above, CMS Exs. 1 and 3 contain copies of Petitioner's Texas criminal history record reflecting that he was charged, pleaded guilty to and was afforded deferred adjudication for felony drug possession. Further, Petitioner affirmatively states in his written direct testimony that he pleaded guilty and performed community supervision as a result of his drug arrest. P. Ex. 10, at 2, ¶ 9. Therefore, substantial evidence in the record supports the conclusion that Petitioner pleaded guilty and the court accepted his plea to felony drug possession.

13

The regulations and case law clearly refute Petitioner's contention that he was never convicted of a felony. As noted above, 42 C.F.R. § 424.530(a)(3) invokes the definition of conviction set forth in 42 C.F.R. § 1001.2. The definition of "conviction" in section 1001.2 includes the very outcome of the charges lodged against Petitioner in this case: deferred adjudication where judgment of conviction has been withheld. *Id.* What matters here is that Petitioner pleaded guilty to a felony, not what the sentencing court did once it accepted Petitioner's guilty plea. That federal law, not state law, controls the meaning of "conviction" in this context is settled law. In *Shipper*, the Board explained:

> [T]he Board has settled the question raised by Petitioner here, concluding that federal law, not state law, controls what constitutes a "conviction" for the purpose of Federal laws designed to protect the Medicare program and its beneficiaries. *Lorrie Laurel, PT* [DAB No. 2524 (2013)] at 4-6 (holding that a Florida court's acceptance of a guilty plea constituted a "conviction" for purposes of revocation of Laurel's Medicare participation even though the court withheld adjudication of guilt); *see also Henry L. Gupton*, DAB No. 2058, at 4-12 (2007) (finding court's acceptance of guilty plea a "conviction" for purposes of Office of Inspector General exclusion notwithstanding state court's deferral of judgment and ultimate expungement of record), *aff'd sub nom. Gupton v. Leavitt*, 575 F. Supp. 2d 874, 880 (E.D. Tenn. 2008) ("This court agrees with the Secretary's interpretation of the statute and the conclusion that Dr. Gupton was 'convicted.'"). We also note that the United States Court of Appeals for the Fifth Circuit recently held that a Texas deferred adjudication constituted a "conviction" or "the functional equivalent of a final conviction" within the meaning of the term as it appears in section 4B1.5(a) of the United States Sentencing Guidelines, even though the Guidelines did not expressly define "conviction." *United States v. Mills,* 843 F.3d 210, 213-217 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1601 (2017).

*Shipper* at 7. None of Petitioner's arguments – that he was not convicted because the sentencing court did not "accept" his guilty plea" or that the guilty finding was not enrolled or that he was never sentenced or (as he proffers) that the case against him ultimately was dismissed and no longer appears on his record – overcome this settled law. Therefore, we conclude that the ALJ did not err when he upheld CMS's determination that Petitioner had been convicted of a felony.

14

> 2.  The ALJ did not err when he upheld CMS's determination that Petitioner's
>     felony conviction was detrimental to the Medicare program and its
>     beneficiaries.

Petitioner argues that it was unreasonable for the ALJ to uphold CMS's determination
that the felony of which he was convicted was detrimental to the best interests of the
Medicare program and that the felony was one that placed the program and its
beneficiaries at immediate risk.[8] Petitioner asserts that the record does not show any
nexus between his felony and healthcare, and that any such risk is "at best, a hypothetical
risk," RR at 4. Any immediate risk, Petitioner argues, is "belied by protective
mechanisms" in place to minimize any risk to the Medicare program and its beneficiaries.
*Id.* Petitioner cites having made "significant efforts in achieving recovery" and states that
he "has since been licensed to practice medicine in Texas, Oklahoma, and Washington."
*Id.*

While Petitioner's efforts to recover from drug addiction are laudable, the ALJ did not err
when he upheld CMS's determination. The only issue before the ALJ was whether CMS
had established a "legal basis for its actions." *Letantia Bussell, M.D.*, DAB No. 2196, at
13 (2008). Where CMS is legally authorized to deny an enrollment application, an ALJ
cannot substitute his or her discretion for that of CMS (or CMS's contractor) in
determining whether, under the circumstances, denial is appropriate. Nor can the Board.
*Bryan K. Ellefsen, DO*, DAB No. 2626 at 7 (2015) (citing *Abdul Razzaque Ahmed, M.D.*,
DAB No. 2261, at 19 (2008) (stating that "we may not substitute our discretion for that of
CMS in determining whether revocation is appropriate under all the circumstances");
*Bussell* at 13 (explaining that "the right to review of CMS's determination by an ALJ
serves to determine whether CMS had the authority to revoke [a petitioner's] Medicare
billing privileges, not to substitute the ALJ's discretion about whether to revoke")).

The regulation at 42 C.F.R. § 424.530(a)(3) provides that CMS may deny a provider's or
supplier's enrollment in the Medicare program if the supplier was convicted of a felony
within the preceding 10 years that CMS determines is detrimental to the best interests of
the Medicare program and its beneficiaries. The ALJ concluded, and it is undisputed,
that the felony at issue occurred within the 10 years preceding Petitioner's application to
enroll as a Medicare supplier. ALJ Decision at 6-7. The ALJ also concluded that CMS
had reasonably determined, on a case by case basis, that Petitioner's felony was

---

[8] Petitioner appears to read the ALJ Decision as concluding that the felony for which Petitioner
was convicted was detrimental only *because* it placed the Medicare program and beneficiaries at
immediate risk; that is, that a finding of "immediate risk" is necessary before a felony other than those
specifically named in the regulation can be found detrimental to the Medicare program and beneficiaries.
As we discuss later in this decision, no such finding is necessary, even though the ALJ found here that the
felony indeed had placed the program and beneficiaries at immediate risk.

detrimental to Medicare.  ALJ Decision at 10.  The ALJ noted that CMS's reconsidered determination reflected that CMS had considered the facts surrounding Petitioner's felony conviction and concluded that his felony conviction, leading to monitoring and close supervision by his state licensing board, "created a nexus between his conviction and the safety of the Medicare program and its beneficiaries."[9]  *Id.*

As we recently explained, the Board has repeatedly held that if the conviction is for a crime other than one of the felonies enumerated in the regulations, CMS may make the determination, on a case-by-case basis, whether the felony conviction at issue is detrimental to the Medicare program and its beneficiaries.  *Brenda Lee Jackson*, DAB No. 2903 at 8 (2018) (citing *e.g., Saeed A. Bajwa, M.D.*, DAB No. 2799, at 10 (2017); citing *Fady Fayad, M.D.,* DAB No. 2266 (2009), *aff'd*, *Fayad v. Sebelius*, 803 F. Supp. 2d 699 (E.D. Mich. 2011)).  CMS's finding of a nexus between the Medicare program and Petitioner's felony drug possession conviction is not unreasonable.  Section 424.530(a)(3)(i) states felony offenses that may result in denial of enrollment "include, but are not limited in scope or severity to" those enumerated in subparagraphs A-D. Thus, by the plain language of the regulation, felonies that CMS may conclude provide a basis for denial of enrollment are not limited to the specific categories listed in the regulation.

Moreover, when CMS revised the Medicare regulations (effective February 2015) establishing requirements for provider and supplier enrollment, it expressly declined to automatically exclude "felonies relating to drugs, alcohol, or traffic violations" from the purview of § 424.530(a)(3)(i) of the regulations.  *See* Preamble to the Final Rule revising the Medicare Program Requirements for Providers and Suppliers to Establish and Maintain Medicare Enrollment, 79 Fed. Reg. 72,500, 72,510.  Indeed, CMS expressly stated that it did "not believe that felonies relating to drugs, alcohol, or traffic violations cannot be detrimental to the best interests of Medicare beneficiaries and thus should be automatically excluded from the purview of §§ 424.530(a)(3) and 424.535(a)(3)."  *Id.* CMS also emphasized that "considering the very serious nature of any felony conviction, our authority in §§ 424.530(a)(3)(i) and 424.535(a)(3)(i) should not be restricted to the categories of felonies identified in (a)(3)(i)."  *Id.* at 72,509-10.  Thus, CMS "modif[ied] the list of felonies in each section such that any felony conviction that we determine to be detrimental to the best interests of the Medicare program and its beneficiaries would constitute a basis for denial [of enrollment] or revocation."  *Id.* at 72,509, 72,512. Further, CMS explained that it takes the severity of the underlying offense into account

---

[9]  The record reflects that Petitioner is licensed to practice medicine in Oklahoma, Texas, and Washington, but that only the state medical boards in Oklahoma and Texas ordered Petitioner's medical practice be monitored and closely supervised. *See* CMS Exs. 1, at 3; 3, at 9.  Neither Petitioner nor CMS has commented on whether Petitioner's unmonitored practice of medicine in Washington militates for or against Petitioner's enrollment being detrimental to the Medicare program and its beneficiaries there.

16

when determining whether denial or revocation is warranted, and that "each case will be carefully reviewed on its own merits and . . . we will act judiciously and with reasonableness in our determinations." *Id.* at 72,510.  CMS also saw the "need for flexibility with respect to the application of §§ 24.530(a)(3)(i) and 424.535(a)(3)(i)."  The regulations, therefore, clearly allow CMS to conclude, on the facts of a particular case, that felony drug possession is detrimental to the Medicare program and establishes the legal basis for enrollment denial.

Here, CMS expressly addressed in its reconsideration denial letter its conclusion that Petitioner's felony drug conviction was detrimental to the Medicare program, stating:

> Dr. White's felony conviction is detrimental to the Medicare program and its beneficiaries because of its nexus to healthcare.  By his own admission, the Texas and Oklahoma medical boards required Dr. White's medical practice to be monitored.  In light of these facts, CMS believes the Medicare beneficiaries, and thereby, Trust Funds may be at risk if Dr. White is approved to participate in the Medicare program.  Therefore, for the reasons stated above, CMS finds the denial of Dr. White's Medicare billing privileges under 42 C.F.R. § 424.530(a)(3) is appropriate.

CMS Ex. 4 at 4.  The ALJ reached a similar conclusion, stating,

> I cannot say CMS' position is unreasonable.  The applicable regulation allows CMS to find detriment to the program and its beneficiaries for "[a]ny felony that placed the Medicare program or its beneficiaries at immediate risk . . . ."  . . . The facts indeed establish that Petitioner's drug usage resulted in his felony conviction, and CMS reasonably found that the resultant monitoring and close supervision of Petitioner by the Texas medical board created the nexus between his conviction and the safety of the Medicare program and its beneficiaries.

ALJ Decision at 10.

As noted above, CMS takes "the severity of the underlying offense" into account in determining whether a felony conviction is detrimental to the Medicare program and its beneficiaries.  79 Fed. Reg. at 72,510.  Petitioner has not produced any evidence to show that CMS failed to consider the severity of the felony or that it otherwise failed to exercise its discretion in reaching its determination that Petitioner's felony conviction was detrimental to Medicare and therefore a legal basis for denial under 42 C.F.R. § 424.530(a)(3).

17

Moreover, CMS was not required to prove that Petitioner's felony was one that placed the Medicare program or its beneficiaries at immediate risk. The regulation provides that various types of felony convictions have been categorically determined to warrant denial of a provider's or supplier's Medicare enrollment application. *See* 42 C.F.R. § 424.530(a)(3)(i)(A)-(D). In addition to felony crimes against persons, financial crimes, and felonies which would result in mandatory exclusion from Federal health care programs, CMS also may deny a provider's or supplier's enrollment application if the felony "placed the Medicare program or its beneficiaries at immediate risk, such as a malpractice suit that results in a conviction of criminal neglect or misconduct." 42 C.F.R. § 424.530(a)(3)(i)(C). In this case, CMS did not base the enrollment denial on a claim that Petitioner's felony was in the latter category. Instead, CMS made a case-by-case determination that Petitioner's felony drug conviction was detrimental to the Medicare program and its beneficiaries, thereby obviating any need for CMS to also find that Petitioner's felony conviction posed an immediate risk. *See Brenda Lee Jackson* at 9. Accordingly, Petitioner's arguments that his drug conviction may not form the legal basis for enrollment denial are unavailing. We therefore conclude that the ALJ correctly determined that CMS had a legal basis to deny Petitioner's Medicare enrollment billing privilege under section 424.530(a)(3).

Conclusion

For the reasons stated above, we affirm the ALJ's decision upholding the denial of Petitioner's Medicare enrollment application.

/s/
Sheila Ann Hegy

/s/
Constance B. Tobias

/s/
Christopher S. Randolph
Presiding Board Member