FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 28, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHEN WHITE, M.D., | No. 2:19-CV-00037-SAB |
|     Plaintiff/Petitioner, | |
|     v. | |
| XAVIER BECERRA, Secretary for the United States Department of Health and Human Services, | **ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT** |
|     Defendant/Respondent. | |

Before the Court are cross-Motions for Summary Judgment, ECF Nos. 39, 42. A hearing on the motions was held on October 18, 2024, in Spokane, Washington. Plaintiff/Petitioner Stephen White, M.D., was represented by Kenneth Miller. Defendant/Respondent Secretary for the United States Department of Health and Human Services was represented by Timothy Durkin.

Dr. White is challenging two unfavorable decisions made by the Secretary for the United States Department of Health and Human Services (the "Secretary") that denied and revoked his Medicare enrollment. The decisions, rendered by the Appellate Division of the Departmental Appeals Board ("Board"), were based on Dr. White's 2010 guilty plea and deferred prosecution for possession of less than 1 gram of cocaine, which occurred in Texas in 2007.

//

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 1**

## Standard of Review

Under the Administrative Procedures Act (APA), an agency's action will be set aside if it is arbitrary and capricious, an abuse of discretion or is unsupported by substantial evidence. 5 U.S.C. § 706(2)(A),(E). An agency violates the APA "if it has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Kaiser Found. Hosps. v. Sebelius*, 649 F.3d 1153, 1159 (9th Cir. 2011) (quotation omitted). An arbitrary and capricious challenge requires the Court to adhere to a narrow scope of review, wherein it is not to substitute its judgment for that of the agency. *Id.* (quotation omitted). The agency is required, however, "to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made." *Id.* The Court, in turn, must review that explanation, considering whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Id.* (quotation omitted).

Judicial review of the Secretary's final decision proceeds pursuant to 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1395cc(h)(1)(A), (j)(8). A district court may enter "judgment affirming, modifying, or reversing the decision of the [Secretary] with or without remanding the cause for rehearing." 42 U.S.C. § 405(g)[1]. The Board's decisions represent the Secretary's final decisions subject to review. 42 U.S.C. § 1395cc(h)(1)(A), (j)(8); 42 C.F.R. § 498.90(a).

---

[1] When applying Section 405(g) to Medicare disputes, the references therein to the Commissioner of Social Security or the Social Security Administration are considered references to the Secretary or HHS, respectively. 42 U.S.C. § 1395cc(h)(1)(A).

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 2**

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. In considering cross motions for summary judgment, the court views the evidence for each of the motions "in the light most favorable to the nonmoving party" for that motion and determines "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002).

//

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 3**

## Background and Procedural Facts

Dr. Stephen White is an orthopedic surgeon. In 2006 and 2007, he was arrested and charged with possession of cocaine[2] in Texas. During this time, he had voluntarily stopped practicing medicine to deal with personal difficulties and his cocaine addiction. He was able to enter rehab and get clean. The Texas Medical Board revoked his license, but then monitored his recovery and compliance. Dr. White had no violations for nine years following his arrest. Eventually, he obtained his medical license back without any restrictions, and he is currently practicing medicine in Washington state and is an enrolled Medicare supplier.

In 2017, Dr. White applied to enroll in Medicare in the State of Washington. Noridian Healthcare Solutions, (MAC), denied his application.[3] The ALJ sustained the denial, finding that CMS had a legitimate basis under 42 C.F.R. § 424.530(a)(3) because Dr. White was convicted of a felony offense that CMS determined to be detrimental to the best interest of the Medicare program and its beneficiaries. The Board affirmed the ALJ's decision, upholding CMS' denial of Dr. White's Medicare enrollment. Dr. White appealed that decision to this Court.

Then, in 2019, while the appeal was still pending, Novitas Solutions notified Dr. White that it was revoking his Medicare billing privileges (presumably in Texas), effective November 2, 2010, due to his felony conviction for possession of

---

[2] He was also arrested for a DUI in 2006.

[3] Noridian cited two bases for denial: (1) 42 C.F.R. § 424.530(a)(3)-Felony Conviction because Petitioner pled guilty to Possession of Controlled Substance less than 1 gram on November 2, 2010; and (2) 42 C.F.R. § 424.530(a)(4)-False or Misleading Information on Application because Petitioner failed to report on his re-enrollment application that he was adjudged guilty of a felony in 2010. Dr. White submitted a Corrective Action Plan (CAP) Request and request for Reconsideration. Noridian denied both the CAP and Reconsideration requests.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 4**

less than one gram of cocaine. The ALJ sustained the revocation, and the Board affirmed. Dr. White also appealed that decision to this Court.

## Legal Framework

### A.    Overview of Medicare Program

The Medicare program provides health insurance benefits to people sixty-five years old or older and to eligible disabled persons. 42 U.S.C. § 1395c. The Secretary has broad authority to administer the Medicare program. 42 U.S.C. § 1302(a). To receive payment for services rendered, Medicare "suppliers," including physicians, must be enrolled in Medicare and maintain the enrollment requirements. 42 C.F.R. § 400.202; 42 C.F.R. § 424.500; 42 C.F.R. § 424.505. The Secretary administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"). 42 C.F.R. § 400.200. CMS contracts with private administrative contractors to administer certain aspects of the Medicare program. 42 U.S.C. § 1395kk-1.

Pursuant to 42 C.F.R. § 424.505, suppliers, such as Dr. White, must be enrolled in the Medicare program and be granted billing privileges to be eligible to receive payment for care and services rendered to a Medicare-eligible beneficiary.

### B.    Denials

CMS may deny a supplier's enrollment for any reason stated in 42 C.F.R. § 424.530. Specifically, subsection (a)(3)(i) provides:

(a) CMS may deny a provider's or supplier's enrollment in the Medicare program for the following reasons:

(3) Felonies. The provider, supplier, or any owner, managing employee, managing organization, officer, or director of the provider or supplier was, within the preceding 10 years, convicted (as that term is defined in 42 CFR 1001.2) of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries.

(i) Offenses include, but are not limited in scope or severity to—

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 5**

(A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.

(B) Financial crimes, such as extortion, embezzlement, income tax evasion, insurance fraud and other similar crimes for which the individual was convicted, including guilty pleas and adjudicated pretrial diversions.

(C) Any felony that placed the Medicare program or its beneficiaries at immediate risk, such as a malpractice suit that results in a conviction of criminal neglect or misconduct.

(D) Any felonies that would result in mandatory exclusion under section 1128(a) of the Act.

## C.   Revocations

Billing privileges are not permanent—once approved, they may be revoked or deactivated. 42 C.F.R. § 424.555(b); *Goffney v. Becerra*, 995 F.3d 737, 740 (9th Cir. 2021). The Secretary has delegated the authority to revoke enrollment and billing privileges to CMS. 42 C.F.R. § 424.535.

CMS may revoke a supplier's enrollment—and the supplier's ability to bill for services under the Medicare program—for failure to abide by the enrollment requirements or other specified reasons. 42 C.F.R. § 424.535.[4]

## ALJ / Board Decisions

### A.   Denial Proceedings

#### 1.   ALJ 2018 decision

The ALJ found CMS had a legitimate basis under 42 C.F.R. § 424.530(a)(3) because White was convicted of a felony offense that CMS determined to be detrimental to the bests interest of the Medicare program in its beneficiaries. It accepted CMS' argument that a person is considered convicted when they enter a guilty plea that has been accepted by a federal, state, or local court, although it

---

[4] The language used in 42 C.F.R. § 424.535(a) is the same language as set forth in 42 C.F.R. § 424.530(a)(3).

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 6**

rejected CMS' argument that a possession charge is akin to the mandatory exclusions involving distribution, manufacture, prescript, or dispensing a controlled substance. The ALJ noted that Congress declined to include mere possession of a controlled substance by an individual as a basis for mandatory exclusion.

CMS argued to the ALJ that the conviction was detrimental to the best interests of the Medicare program and its beneficiaries because it led to Dr. White's monitoring by his state licensing board, while rejecting Dr. White's equitable arguments that (1) he self-reported and was not practicing; (2) using his self-report to deny would encourage other physicians to not self-report, (3) he has fully complied with the terms of the modified license, and (4) eventually he was allowed to practice medicine without limitations. The ALJ concluded it "could not say CMS' position was unreasonable."

The ALJ went on to say:

> I must acknowledge the record demonstrates Petitioner's significant efforts in achieving recovery and regaining his ability to practice medicine without supervision. It would be reasonable to conclude that Petitioner is no longer a threat to the Medicare program or to its beneficiaries. However, as I emphasized above, the regulatory language at issue only requires the felony to have "placed" the program and its beneficiaries at immediate risk; it does not require that felony to still be an immediate risk at the time of the denial of enrollment. 42 C.F.R. § 424.530(a)(3)(i)(C). Unfortunately, I am bound by the plain language of the regulation. Although Petitioner's arguments for allowing his enrollment are persuasive, I cannot provide the equitable relief he seeks.

> I cannot say CMS has exercised its discretion regarding Petitioner's enrollment in a way that actually makes the Medicare program or its beneficiaries any safer. But for the reasons outlined above, I must conclude that CMS had a legitimate basis to deny Petitioner's enrollment application based on his felony conviction and the risk of harm it posed to the Medicare program and its beneficiaries. However, given that more than ten years since Petitioner's felony conviction

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 7**

have now passed, and that no less than three state medical boards have deemed him capable of practicing medicine without need for monitoring or supervision, it is my expectation that CMS will better exercise its discretion concerning Petitioner's next enrollment application.

### 2. DAB 2018 decision

The Board affirmed the ALJ's decision, upholding CMS' denial of Dr. White's Medicare enrollment. The Board determine (i) the ALJ correctly decided that White's guilty plea and deferred adjudication for felony drug possession established a qualifying felony conviction for purposes of denying enrollment and (ii) the ALJ did not err by upholding CMS' determination that White's felony offense was detrimental to the Medicare program and its beneficiaries.

### B. Revocation Proceedings

### 1. ALJ February 8, 2021 decision

The ALJ upheld CMS' determination to revoke Dr. White's Medicare enrollment and billing privileges. The ALJ concluded Dr. White was "currently enrolled" in Medicare at the time of the revocation. It held Dr. White was barred from relitigating the issue of whether his offense was detrimental to Medicare and its beneficiaries by the doctrine of collateral estoppel.

Prior to reaching a decision, the ALJ questioned whether White was even enrolled in Medicare, given the Washington state denial in 2017. CMS submitted a declaration from M.H, who stated that at the time of the revocation decision, White was individually enrolled in the Medicare program and had an active reassignment of benefits to Orthopedics Texoma, LLC (PTAN 8F23747).[5] M.H. explained the //

---

[5] A PTAN is a Provider Transaction Access Number. This is used by Medicare's claims processing system to identify the physician as an enrolled supplier and ensure that proper payments are made.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 8**

reassignment to Texoma, LLC was not revoked until March 21, 2019.[6] The ALJ found there was no dispute that White remained enrolled in Medicare in Texas in March 2019, thus, CMS was authorized to revoke White's Medicare enrollment and billing privileges.

The ALJ found that even if collateral estoppel did not apply, CMS made a "case by case" determination that White's offense was detrimental to the best interests of the Medicare program and its beneficiaries. It cited CMS' determination that the conviction showed a disregard for abiding by laws and a lack of good judgment and that his involvement with illegal drugs presented a danger to the health, safety, and welfare of Medicare beneficiaries, regardless that these events took place during a time when he was not practicing medicine. It found CMS' determination was "not unreasonable,' noting there was no evidence CMS failed to consider the seriousness of White's offense or otherwise fail to properly exercise its discretion.

Finally, the ALJ rejected White's argument that the revocation was retaliatory, arbitrary and capricious. It concluded, "To the extent White's arguments are request for equitable relief, I have no authority . . . to substitute my judgment and void the revocation based on equitable considerations."

### 2.    October 16, 2023 Decision

The Board affirmed the ALJ's decision, finding its conclusion that Dr. White was convicted of a felony offense within the meaning of 42 C.F.R. § 1001.2 was proper. It concluded the definition of "convicted" included "deferred adjudication where judgment of conviction has been withheld," which was what happened in Dr. White's case; therefore, the Board's previous determination that his conviction

---

[6] M.H. explained that a supplier has a separate enrollment record for each state they are enrolled in, and Dr. White was enrolled in Texas when he applied for enrollment in Washington state and remained enrolled after the 2017 denial.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 9**

qualified was binding on Dr. White. It rejected Dr. White's argument that a copy of the actual guilty plea is necessary to establish the undisputed facts of the Order. It also noted that Dr. White did not present any evidence that the Texas court did not accept his guilty plea.

It affirmed CMS' reasons that Dr. White's felony offense was detrimental to the best interest of the Medicare program because the conviction involved a disregard for abiding by laws and a lack of good judgment. It found that none of the circumstances, such as White's subsequent sobriety, subsequent compliance with state-imposed probation requirements, subsequent medical licensing and subsequent treatment of Medicare beneficiaries without detriment, show that CMS lacked a lawful basis for the revocation. It concluded these circumstances have no bearing on the question of whether there is or is not a legal basis for revocation.

It rejected Dr. White's argument that the timing of the revocation action by CMS was clearly retaliatory and intended to apply pressure on Dr. White for additional monetary penalties and instead found the argument was not supported by any evidence and therefore had no merit. It concluded the timing of CMS' revocation determination in relationship to White's enrollment denial and subsequent appeal had no bearing on this matter because CMS may revoke any time. The only legally mandated time limit is that it occurred within the proceeding 10 years. Finally, it concluded it did not have authority to reverse the revocation based on equitable considerations.

Finally, it affirmed the ALJ's determination that at the time of the revocation, Dr. White was enrolled in Medicare with billing privileges in Texas, regardless of whether he was actively billing Medicare.

## Analysis

The Court finds CMS' decisions to deny Dr. White enrollment in Medicare and revoke his privileges, and the subsequent Board's affirmations, were arbitrary and capricious and not supported substantial evidence. CMS did not have a

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 10**

legitimate reason to deny enrollment or revoke because the record does not support CMS' assertions that Dr. White's 2010 conviction for simple possession of a small amount of cocaine was detrimental to the best interest of the Medicare program and its beneficiaries. There is nothing in the record to support CMS' contention that it made a "case by case" determination regarding Dr. White and his circumstances, either positive or negative. It entirely failed to consider an important aspect of Dr. White's situation, including that at the time of the conviction, he was *not* practicing medicine. It failed to consider Dr. White's subsequent sobriety, the shortening of his medical board supervision, he was subsequently licensed to practice medicine in Oklahoma and Washington, and that he practiced medicine for nearly a decade since the offense without showing any detriment whatsoever to Medicare beneficiaries. Instead of showing poor judgment, it was clear Dr. White was exercising good judgment in not practicing and seeking help with his addiction. Moreover, the regulations enumerate crimes that result in mandatory exclusion and simple possession of a controlled substance is not one of the per se exclusions. *See* 42 C.F.R. § 424.530(a)(3)(i)(D). Yet, CMS seemingly treats simple possession of cocaine as if it were a per se exclusion by failing to identify any specific reason that this particular conviction would be detrimental to the best interests of the Medicare program. Also, it appears CMS previously enrolled Dr. White in Medicare based on his 2010 Application, even though the Application provided CMS with the same information regarding the prior conduct that it is using now to deny and revoke Dr. White. This is arbitrary and capricious and its decision to deny and revoke is not supported by substantial evidence.

Although CMS has broad discretion to determine whether certain acts are detrimental, it cannot exercise that discretion in an arbitrary or capricious manner. That is what CMS did. This Court understands the deference owed to administrative agencies as they adjudicate numerous complex cases before them.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ~ 11**

Yet, its role is not so limited that it simply acts as a rubber stamp for agency decisions. *See Dickinson v. Zurko*, 527 U.S. 150, 162 (1999); *Alaska Oil and Gas Ass'n v. Jewell*, 815 F.3d 544, 554 (9th Cir. 2016). Because CMS failed to provide a reasonable basis for denying Dr. White his enrollment in Medicare or revoking his Medicare privileges, the decision of the Secretary is reversed.[7]

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff/Petitioner's Motion for Summary Judgment, ECF No. 39, is **GRANTED**.

2.    Defendant/Respondent's Motion for Summary Judgment, ECF NO. 42, is **DENIED**.

3.    The decision of the Secretary is **REVERSED**.

4.    The Clerk of Court is directed enter judgment in favor of Plaintiff/Petitioner and against Defendant/Respondent.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 28th day of October 2024.

Stanley A. Bastian
Chief United States District Judge

---

[7] Because the Court find the Secretary's decisions to deny enrollment and revoke Dr. White's privileges were arbitrary and capricious and not supported by substantial evidence, the Court does not have to address the parties' arguments regarding whether the deferred action was a conviction as defined under the regulations. Moreover, at oral argument, the United States conceded that whether Dr. White was misleading on his applications was a moot issue.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT** ~ 12